**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MOSI WILLIAMS,**

      **Plaintiff,**

**vs.**                             **Case No. 4:11cv350-MW/CAS**

**FLORIDA STATE UNIVERSITY
BOARD OF TRUSTEES,**

      **Defendant.**

_____/

## AMENDED REPORT AND RECOMMENDATION

After entry of a report and recommendation, doc. 57, on November 19, 2013, the pro se Plaintiff filed an Objection, doc. 58, with an affidavit and additional evidence which was not previously submitted, doc. 59. The case has been remanded for consideration in the first instance of Plaintiff's "new facts." Doc. 60. After consideration of Plaintiff's newly submitted documents, this amended report and recommendation is entered and the prior report and recommendation is vacated.

In July 2013, Defendant filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment, doc. 42. Because Defendant submitted a separate statement of material facts which Defendant contends are undisputed, doc. 43, as well as two supporting affidavits, doc. 44, Defendant's motion, doc. 42, was construed as a motion for summary judgment and Plaintiff advised of his obligation to respond to the motion.

Doc. 45.  In particular, Plaintiff was advised that he had the burden of proof, that he must come forward with "evidence from which a jury might return a verdict in his favor," and he was advised as to the appropriate evidentiary material which he should submit. *Id.* at 2-4.

Thereafter, Plaintiff submitted a "Notice of Filing Evidence with Supporting Memorandum of Law and Supporting Documents in Support of Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment." Doc. 46.  Plaintiff simultaneously filed a Response with Supporting Memorandum of Law, doc. 47, a "Statement of Facts," doc. 48, and a "Notice of Claim," doc. 49.  The parties were also granted leave to file replies.  Doc. 55.  Defendant's reply, doc. 52, and Plaintiff's sur-reply, doc. 54, have also been considered.  Though untimely, Plaintiff's newly submitted evidence has also been reviewed.

**Procedural Status**

Plaintiff initially filed a complaint in state court alleging discrimination under federal law and state law claims for breach of contract, misleading advertising and deceptive and unfair trade practices.  *See* docs. 1, 3-1, and 6.  The case was removed from state court on July 22, 2011, by Defendant Betsy Becker.  Docs. 1, 6. Subsequently, Plaintiff's claim against Defendant Becker was dismissed because she was an improper Defendant in a federal discrimination claim but Plaintiff was permitted to file an amended complaint.  Docs. 8, 13.  Plaintiff's Fourth Amended Complaint was filed on January 2, 2013, against The Florida State University Board of Trustees as the only Defendant.  Doc. 33.  Although that version of the complaint did not set forth the basis for this Court's jurisdiction, because a pro se litigant's complaint must be liberally

construed, Plaintiff's Fourth Amended Complaint is deemed to proceed pursuant to this

Court's diversity jurisdiction under 28 U.S.C. § 1332(a).[1]

**Plaintiff's Claims, doc. 33**

Plaintiff's Fourth Amended Complaint asserts four claims against the Defendant

for breach of contract, misleading advertising, deceptive and unfair trade practices, and

negligence.  Doc. 33 at 7-9.  Plaintiff's claims stem from his admission into the Sport

Psychology Doctoral program at The Florida State University in August 2004.  *Id.* at 3.

Plaintiff alleges that in 2006, he was informed that the University "did not have the

respecialization program, nor was it an option for the sport psychology doctoral program

. . . ."  *Id.*  Plaintiff was informed that the respecialization program had been "mistakenly

offered," *Id.* at 5, and Plaintiff was later denied admission into a "Combined PhD

program in Counseling and School Psychology," although he was qualified.  *Id.* at 6.  As

relief, Plaintiff seeks $200,000.00 in compensatory damages.  *Id.* at 10.  Plaintiff

asserted that he was "in compliance with Florida Statute 768.28 in bringing tort claims

against the Defendant."  *Id.* at 1.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, a defendant initially has the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  <u>Celotex</u>

<u>Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with

evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An

---

[1] Plaintiff previously asserted his California residency, doc. 3-1, and he has
maintained the California address throughout this litigation.  The complaint seeks
damages exceeding the $75,000 threshold.  Doc. 33 at 10.  28 U.S.C. § 1332.

issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v.
Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).
Plaintiff must show more than the existence of a "metaphysical doubt" regarding the
material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475
U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of
evidence is insufficient.  The Court must decide "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting*
Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202
(1986).  All reasonable inferences must be resolved in the light most favorable to the
nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if
there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127
S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677
(2009).  "Where the record taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial
Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano,
129 S.Ct. at 2677.

  "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by
her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v.
Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*
Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The
nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**Basis for Motion for Summary Judgment**

Defendant contends that Plaintiff's claim for "breach of implied contract is subject to dismissal as it is barred by the doctrines of sovereign immunity and statute of limitations and its claimed terms are not alleged with enough particularity to allow the court to attempt to enforce same." Doc. 42 at 2. Defendant further argues that the second and fourth claims "are barred by the applicable statute of limitations and the failure to file proper statutory notice under Florida Statutes 768.28." *Id.* at 3. Dismissal is sought of the third count because it "is barred by sovereign immunity, the applicable statute of limitations and the failure to file proper statutory notice under Florida Statutes 768.28." *Id.*

**The Relevant Rule 56(e) evidence**

Defendant submitted an affidavit by Mike Andrews, Administrator for the Florida Department of Financial Services, as evidence to support the summary judgment motion. Doc. 44 at 3-4. Andrews declares that pursuant to "the Office of the General Counsel's practice and procedure, the State of Florida, Department of Financial Services is notified when a state agency such as the Florida State University, Board of Trustees receives written notice of a claim." *Id.* at 3. The Department of Financial Services also receives written notice of any claims which is "furnished with the original Summons and Complaint after service is effectuated." *Id.* Andrews "reviewed the records maintained by the Department of Financial Services [hereinafter DFS] and

determined that [DFS] has no record of ever being placed on written notice of this claim by the Plaintiff pursuant to Florida Statutes 768.28." *Id.*

Additionally, Defendant submitted an affidavit by Robyn Blank Jackson, an Associate General Counsel at The Florida State University. Doc. 44 at 5-6. Jackson avers that on July 15, 2011, the Office of General Counsel was "served with a complaint and summons in a case styled 'Mosi Williams v. Dr. Betsy Becker', filed in the Second Judicial Circuit of Florida." *Id.* at 5.[2] Jackson states that those have been the only two documents received and "The Florida State University Board of Trustees has never received the required notice pursuant to Florida Statutes 768.28 from, or on behalf of, Mosi Williams, concerning the claims brought in the subject action." *Id.*

Plaintiff submitted his own affidavit in which he states that the Notice of Claim was served on DFS and The Florida State University Board of Trustees sometime after July 8, 2013. Doc. 46 at 4-5. Prior to that date, but within 2013, DFS and The Florida State University Board of Trustees "were served with copies of the actual claim itself." *Id.* at 5.[3] "Prior to that, in 2012, both [DFS] and [T]he Florida State University were given written requests for assistance with this matter, to which they declined to provide restitution." *Id.* Plaintiff avers in the affidavit that the fourth amended complaint was

---

[2] Dr. Becker is a faculty member at The Florida State University and former Defendant in this case. *See* doc. 13.

[3] In his statement of facts, Plaintiff makes a contrary assertion that the Department of Financial Services [DFS] received notice of his claim in 2012, doc. 48 at 1-2, and contends that an email notice from DFS is the Department's response to his claim. *See* doc. 46 at 19 (Plaintiff's Ex. 6). As will be discussed, the email does not, however, demonstrate what was received from Plaintiff nor does it confirm receipt of a notice of claim.

filed and served on the Defendant "more than six months after restitution was not provided . . . ." *Id.*; *see also* doc. 46 at 17 (proof of service on June 7, 2013).

Plaintiff submitted what purports to be an email as his Exhibit 6. Doc. 46 at 19 (Ex. 6). The document does not contain any identifying information, and lacks the usual email heading which shows the email address to whom it is sent, and date and time. It is not clear what the purported email was responding to from Plaintiff, and Plaintiff did not provide a copy of an email he sent to DFS which prompted the response. *See* doc. 46 at 19 (Plaintiff's Ex. 6). Furthermore, the substance of that document provides in relevant part:

> Dear Mr. Williams: Thank you for contacting the Department of Financial Services (DFS) regarding Florida State University. The DFS has no regulatory authority over the universities in Florida. You would need to contact the following at the address listed below, for their review of the issues presented.

Doc. 46 at 19. The address provided was for the Florida Board of Governors, State University System. *Id.* The document appears to have been sent from Rick Lunsford, DFS Insurance Specialist III, and advises Plaintiff he "may wish to seek legal counsel to determine if there are other avenues to pursue your request." *Id.*

As additional evidence, Plaintiff provided a letter from Dean Nancy Marcus, dated November 2, 2009, which advised that "[t]he appeals committee of the Department of Educational Psychology and Learning Systems has reviewed [Plaintiff's] request for reconsideration of the decision not to admit [Plaintiff] for graduate study in the program in combined program [sic] in Counseling Psychology/School Psychology." Doc. 46 at 18 (Plaintiff's Ex. 5). The letter advised that the denial of Plaintiff's admission into that program was "final and there shall be no further appeals." *Id.* Plaintiff also submitted

an email from Jennifer Buchanan dated August 28, 2009, which provided Plaintiff with

guidance on how to appeal the denial of admission into the Counseling Psychology

degree program, and wishing him luck in completing his degree in Educational

Psychology with a major in Sports Psychology.  Doc. 46 at 26 (Ex. 9).  Plaintiff

submitted an earlier email from Dr. Judith J. Devine, dated August 14, 2009, which

advised that Plaintiff could not "re-specialize" as that "is not an option offered to

graduate students by Counseling Psychology."  *Id.* at 27 (Ex. 10).[4]

Plaintiff also filed a document entitled "Notice of Claim" on August 13, 2013, doc.

49, which was dated and signed by Plaintiff on August 6, 2013.  Plaintiff submitted a

separate "Return of Service" which demonstrates the notice was served on DFS and on

the Defendant on August 9, 2013.  Doc. 50 at 1-2, doc. 50-1 at 1-2.

Belatedly, Plaintiff submitted additional evidence along with his Objections, doc.

59, after issuance of the Report and Recommendation, doc. 57.  One relevant

document is a purported copy of a letter Plaintiff sent to the Florida Department of

Financial Services.  Plaintiff's Ex. 1, Doc. 59 at 3-4.  Presumably, this is the letter which

Plaintiff referenced in his affidavit when he stated: "Prior to that, in 2012, both [DFS] and

[T]he Florida State University were given written requests for assistance with this matter

. . . ."  Doc. 46 at 5.

---

[4] Another email advises that "[t]he process for one to respecialize is to enroll in
Sport Psychology for one year, then apply to Counseling."  Doc. 46, at 28 (Ex. 11).
Further, Dr. Devine said that "Sport Psychology has no role in whether students are
accepted into the Counseling program of study."  *Id.*

Another document is an email string, beginning with an email to Dr. Abel dated

August 12, 2010, in which Plaintiff "wanted to touch base with you regarding" his

situation.  Doc. 59, at 8.  Dr. Able responded:

> Thank you for checking in.  I have copied below the letter sent to you earlier from
> Dr. Eklund outlining what you need to accomplish to graduate.  It is important that
> you stay in touch with your advisors as they can provide a great deal of guidance
> as you prepare for you [sic] preliminary defense on September 24, 2010.

Doc. 59 at 6.  Below the response from Dr. Able was an email from Dr. Eklund to

Plaintiff originally dated May 22, 2010.  *Id.* at 6-8.  That email concerned information

relevant to Plaintiff's preliminary defense and prospectus approval.  *Id.*

Plaintiff submitted a copy of an email response dated December 9, 2010, which

thanked him "for applying to Florida State University!"  Plaintiff's Ex. 6, doc. 59 at 9.

Plaintiff's Exhibit 7 is a copy of the decision, apparently communicated by email, which

denied Plaintiff a place in the "graduate program Counseling Psychology and School

Psychology (Combined Program) for Fall 2011 Main Campus."  Plaintiff's Ex. 7, doc. 59

at 10-11.  That decision is dated April 4, 2011, and was from Dr. Betsy Becker.  *Id.*

**Analysis**

### a.    Breach of Contract Claim

Defendant contends that count one, the claim for breach of contract, is barred by

the doctrine of sovereign immunity, as well as subject to dismissal pursuant to the

"statute of limitations and [because] its claimed terms are not alleged with enough

particularity to allow the court to attempt to enforce same."  Doc. 42 at 2, 3-4.  "The

doctrine of sovereign immunity, which provides that a sovereign cannot be sued without

its own permission, has been a fundamental tenet of Anglo–American jurisprudence for

centuries and is based on the principle that 'the King can do no wrong.'" American Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005) (answering certified questions from the Eleventh Circuit regarding sovereign immunity). The legislature may waive the state's sovereign immunity, but any such waiver must be clear and unequivocal. American Home Assur., 908 So. 2d at 471-72.

In the seminal case discussing state sovereign immunity in contract actions, Pan–Am Tobacco v. Dep't of Corr., 471 So.2d 4 (Fla. 1984), the Florida Supreme Court noted that even though the legislature explicitly waived sovereign immunity in tort claims pursuant to § 768.28, there was "no analogous waiver in contract." Pan-Am, 471 So.2d at 5. The Court concluded that although the state's sovereign immunity was not expressly waived from suits concerning contract claims, the legislature's grant of authority to enter into contracts implicitly waived the immunity bar. 471 So.2d at 5. The Court held that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." Id. The Court emphasized that its holding was "applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." Id. at 6.

The follow-up case to Pan-Am was American Home Assurance in which the Florida Supreme Court reiterated that "Florida's Constitution expressly limits the state's ability to expend funds and enter contracts by requiring specific statutory authority." 908 So.2d at 476. Ultimately the Court found that Pan-Am was not applicable because municipalities possess a "broad grant of power" and were "authorized to execute contracts and were liable for their breach" long before the Pan-Am decision. Id. In

reaching that decision, the Court noted that the plain language of § 768.28 "only applies to 'actions at law against the state or any of its agencies or subdivisions to recover damages in tort.'" *Id.* at 474.

   As established nearly thirty years ago in Pan-Am, sovereign immunity is not waived for claims based on an unwritten, implied contract. *See* Financial Healthcare Assoc., Inc. v. Public Health Trust of Miami–Dade Cnty., 488 F.Supp.2d 1231 (S.D. Fla. 2007) (holding that "the implied contract alleged in Count II is not an express written contract and therefore it fails to escape the sovereign immunity bar as articulated in Pan–Am."). In this case, there is no evidence of an express, written contract. Plaintiff has argued that "a program of study is a signed contract between the student and university committee . . . ." Doc. 58 at 3. While a student's relationship with his university is contractual in nature, it is an implied contract and not an express, written contract. *See* Jallali v. Nova Southeastern University, Inc., 992 So.2d 338, 342 (Fla. 4th DCA 2008) (reversing trial court's final judgment and remanding for entry of judgment in favor of Nova on the basis that the University "was authorized to change its degree requirements after 1998 to require students to pass the Comlex Level II exam within six years of matriculation."), *citing* Mahavongsanan v. Hall, 529 F.2d 448 (5th Cir. 1976) (finding that university is implicitly entitled to modify its academic degree requirements); John B. Stetson Univ. v. Hunt, 88 Fla. 510, 102 So. 637, 640 (1924) (finding there is a contractual relationship between a student and a private university); Univ. of Miami v. Militana, 184 So.2d 701, 704 (Fla. 3d DCA 1966) (noting that acceptance into a private university's degree program has "some of the characteristics of a contract between the parties," but noting that the School of Medicine has discretion in promoting students and

terminating a student from the school or degree program). <u>Sharick v. Southeastern Univ. of the Health Sciences, Inc.</u>, 780 So.2d 136, 138 (Fla. 3d DCA 2000) (noting that student and university relationship is contractual in nature).

In this case, Plaintiff was not a student at a private university, but an institute of higher learning which is part of the Florida State university system. *See* <u>Graham v. Haridopolos</u>, 108 So.3d 597, 600 (Fla. 2013). Even accepting that there is an implied contractual relationship between Plaintiff and the Defendant, because sovereign immunity has not been waived from suits alleging the breach of an implied, unwritten contract, summary judgment should be granted in Defendant's favor. *See* doc. 8 at 7. As this finding is conclusive, there is no need to address the Defendant's remaining arguments concerning the dismissal of the breach of contract claim.

### b. Tort Claims

Plaintiff's remaining claims are for misleading advertising, deceptive and unfair trade practices, and negligence. Doc. 33 at 7-9. Claims such as "fraud and misleading advertising are torts independent of" the breach of contract claims. *See* <u>Burton v. Linotype Co.</u>, 556 So. 2d 1126, 1128 (Fla. 3d DCA 1989), *review denied*, 564 So.2d 1086 (Fla. 1990) (Table); <u>Future Tech Intern., Inc. v. Tae Il Media, Ltd.</u>, 944 F.Supp. 1538, 1568 (S.D. Fla. 1996). A violation of the Florida Deceptive and Unfair trade Practices Act, Fla. Stat. § 501.201, *et seq.*, is also a tort.[5] <u>State of Fla., Office of Atty.</u>

---

[5] "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.' " <u>Florida v. Tenet Healthcare Corp.</u>, 420 F.Supp.2d 1288, 1310 (S.D. Fla. 2005) (quoting <u>Davis v. Powertel, Inc.</u>, 776 So.2d 971, 974 (Fla. 1st DCA 2000), *quoted in* <u>Galstaldi v. Sunvest Communities USA, LLC</u>, 637 F.Supp.2d 1045, 1058 (S.D. Fla. 2009).

<u>Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.</u>, 420 F.Supp.2d 1288, 1310-11 (S.D. Fla. 2005), *citing* <u>Office of Attorney Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.</u>, 869 So.2d 592, 598 (Fla. 1st DCA 2004) (explaining that "[a] deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Negligence is unquestionably a tort and § 768.28 governs all remaining claims. <u>Public Health Trust of Miami-Dade County v. Acanda</u>, 71 So.3d 782, 784 (Fla. 2011).

Pursuant to the explicit terms of the statute, notice to the state agency and to DFS is a condition precedent to maintaining a cause of action, and notice must be provided within three years of the accrual of the claim. <u>Public Health Trust</u>, 71 So.3d at 784. The relevant statute provides: "An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing." FLA. STAT. § 768.28(6)(a). Furthermore, the statute provides that "the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues." FLA. STAT.

§ 768.28(6)(b).[6]  Because Florida law requires strict compliance with § 768.28's notice

requirement, a suit may be dismissed for lack of notice.  <u>Rumler v. Dep't of Corr.</u>, 546

F.Supp.2d 1334, 1344 (M.D. Fla. 2008); <u>Brown v. City of Miami Beach</u>, 684 F.Supp.

1081, 1084 (S.D. Fla. 1988).

**A.    Accrual**

There has been difficulty in determining the accrual date for Plaintiff's claims

because Plaintiff has not argued that one date controls.  Rather, Plaintiff has suggested

four different dates and his arguments have changed throughout the litigation of this

case.

Plaintiff stated in his Statement of Facts that his claims accrued in "early 2006"

when he was informed that there was no "respecialization" offered in the Sports

Psychology doctoral program.  Doc. 48 at 2; doc. 42 at 2.  While Plaintiff alleged being

first informed in 2006 that he was not in the combined program for which he believed he

had been admitted, that date is not determinative.  Plaintiff has shown that he was

required to apply for admission into the combined program of study and he was able to

---

[6]    "After such written notice, the Department of Financial Services or the
appropriate agency will be given the opportunity to investigate the claim
and either provide or deny a remedy, and the requirements of notice and
denial of the claim are conditions precedent for maintaining a tort action
against a Florida state entity.  See Fla. Stat. § 768.28(6)(a)-(b).
Nevertheless, pursuant to the statute, the failure of the Department of
Financial Services or the appropriate agency to make a final disposition of
the claim in writing within six months of its filing is deemed a final denial of
the claim.  See Fla. Stat. § 768.28(6)(d).  Thus, absent receipt of a denial
in writing, section 768.28(6)(d) essentially requires a claimant to wait six
months from the date of notice prior to commencing a tort action against a
Florida state entity.  See <i>id.</i>

<u>Rumler v. Dep't of Corr.</u>, 546 F.Supp.2d at 1344.

appeal the decision which denied him admission.  Plaintiff's evidence shows he was

denied admission into the combined Counseling Psychology and School Psychology

program by letter dated November 2, 2009.  Doc. 46 at 18.

Plaintiff argues that because he last attended courses[7] at The Florida State

University in December of 2010, that should be deemed the end of his contract with the

University, and he suggests that should be the date from which the three years is

calculated.[8]  Doc. 54 at 1.  That date is not the accrual date of his claim because it is not

the date on which Plaintiff was advised that he could not continue the degree program

to which Plaintiff contends he had already been admitted.  It is that factual scenario

upon which all tort claims follow, and those facts must be the basis for determining

when his claims accrued.

In Plaintiff's Objection to Summary Judgment, doc. 58,[9] Plaintiff points to an

email dated August 16, 2010, which presents the decision of Provost Dr. Larry Abele, as

the relevant date.  Plaintiff contends that his decision "was the furthest that the Plaintiff

could take his appeals within the University."  Doc. 58 at 4, *citing* doc. 59 at 6-8.

Plaintiff's argument must be rejected because the email exchange with Provost Larry

Abel did not concern any appeal of any decision.  Rather, that email was in response to

an email from Plaintiff and gave Plaintiff information on what he needed "to accomplish

_____

[7] Because the date Plaintiff was registered for classes is not relevant to the
accrual date, that evidence has not been considered.

[8] Claims must be presented in writing to DFS "within 3 years after such claim
accrues . . . ."  FLA. STAT. § 768.28(6)(a).

[9] Plaintiff's Objection is unsworn and is not evidence but is considered as
argument only.

to graduate." The email gave guidance to Plaintiff on preparing for his preliminary

defense in September of 2010.

Plaintiff next asserts that he "appealed again by applying to be accepted in the

Combined Counseling and School Psychology Program on December 8th, 2010, while

he was still a student at FSU." Doc. 58 at 4. Plaintiff advises that his application was

not rejected until April 4, 2011. *Id.* This date is also rejected because the denial of that

request for admission was based on a new, separate application for admission. It is

unrelated to Plaintiff's tort claims that Defendant took payment from Plaintiff for years for

a "respecialization program" that Plaintiff had been admitted into, then advised it no

longer existed, and then denied admission into, despite being qualified.[10] Plaintiff

cannot continue to submit new, separate applications as an attempt to indefinitely delay

the date on which his tort claims for misleading advertising, deceptive and unfair trade

practices, and negligence accrued. Those tort claims are unrelated to new applications

into a different course of study and different degree program.

Having fully reviewed Plaintiff's evidence and arguments, the following time line

provides clarity in determining one final date on which Plaintiff's claims accrued.

Plaintiff was accepted into a program of study in 2004 but learned two years later that

"Florida State University did not have the respecialization program, nor was it an option

for the sport psychology doctoral program," and he must apply to a combined doctoral

program. Doc. 33 at 3-5. Plaintiff was denied admission into that program and,

---

[10] Plaintiff's tort claims which form the basis for this case are that after being accepted into the Sport Psychology Doctoral program in 2004, and after having been in the program for two years, he was advised in 2006 that there was no respecialization program option. Doc. 33.

thereafter, received a letter from Dean Nancy Marcus, dated November 2, 2009,

advising him that the appeals committee of the Department of Educational Psychology

and Learning Systems reviewed Plaintiff's request for reconsideration of the decision

not to admit him into the combined program of Counseling Psychology and School

Psychology.  Doc. 46 at 18 (Plaintiff's Ex. 5).  The letter advised that the denial of

Plaintiff's admission into that program was "final and there shall be no further appeals."

*Id.*  Because the evidence reveals Plaintiff received a final appeal response on

November 2, 2009, that is the relevant date for determining the accrual date from which

the statute of limitations begins to run.

### B.    Notice

Plaintiff had three years from November 2, 2009, to provide notice.  To pursue

this case, Plaintiff must have submitted notice of his claim to DFS and the Defendant no

later than November 2, 2012.

> We recognize that although notice is required by the statute, the form of the
> notice is not specified. Therefore, "it follows that any manner of submitting a
> written notice of the claim to the agency involved that sufficiently describes or
> identifies the occurrence so that the agency may investigate it, satisfies the
> statute." *Franklin v. Palm Beach Cnty.*, 534 So.2d 828, 830 (Fla. 4th DCA 1988);
> *Smart v. Monge*, 667 So.2d 957 (Fla. 2d DCA 1996).  Nevertheless, the notice, in
> any form, must be sufficiently direct and specific to reasonably put the
> department on notice of the existence of the claim and demand.  The notice must
> advise the department that a claim is made against a state agency or
> subdivision.  *See Brower v. State Dept. of Natural Res.*, 698 So.2d 568, 570 (Fla.
> 2d DCA 1997).

LaRiviere v. South Broward Hosp. Dist., 889 So.2d 972, 974 (Fla. 4th DCA 2004).  The

issue here is when did Plaintiff submit his notice, and what document constitutes his

"notice."

Plaintiff contends that the email response from DFS is proof that Plaintiff submitted his claim in April of 2012 and shows DFS has a "record of receiving written notice of" his claim.  Doc. 54 at 1-2.  On the other hand, Defendant argues that Plaintiff's recent Notice of Claim, doc. 49, which was served on the Defendant and on DFS on August 9, 2013, demonstrates that Plaintiff realized he had not previously filed a proper notice.  Doc. 52, *citing* to doc. 50.[11]  In his Objections, Plaintiff disputes that argument and states that his August 2013 submission was "not because the Plaintiff realize[d] that his previous notices were not proper."  Doc. 58 at 1.

In his Objections, Plaintiff contends that he sent a notice to DFS via an email on March 24, 2012.  Doc. 58 at 2.  Plaintiff does not have a copy of that email text.  *Id.*  He claims that DFS should have a copy of the message.  *Id.*  The failure in this argument is that it is Plaintiff's obligation to present evidence to support his claims.  Plaintiff's Objections are not evidence and the deadline to do so has long passed.  Nevertheless, Plaintiff's email is problematic because it is unknown what Plaintiff sent that precipitated the response from Rick Lunsford with DFS.  *See* doc. 46 at 19 (Ex. 6).  Yet, ultimately, it is not helpful to Plaintiff's claim because the email response demonstrates that DFS did not construe whatever Plaintiff submitted as a notice of claim because the response directs Plaintiff to contact others to assist with his "request."  *Id.*  Because Plaintiff's email was not "sufficiently direct and specific to reasonably put the department on notice

---

[11] Document 50 is the Return of Service demonstrating service on DFS and the Defendant.  Document 49 is the Notice of Claim wherein Plaintiff states that he seeks $200,000.00 from The Florida State University Board of Trustees and asserts four claims against the Defendant.

of the existence of the claim and demand," it is insufficient evidence for this Court to find

that Plaintiff's email constitutes the legal notice required by statute.

Moreover, Plaintiff's own affidavit indicates that he served his notice of claim in

2013, which is beyond the November 2, 2012, three-year deadline, and that his 2012

communication to "both the DFS and [T]he Florida State University were . . . written

requests for assistance with this matter, to which they declined to provide restitution."

Doc. 46 at 5 (Ex. 1).  The email is not evidence of a timely claim but a request for

assistance.  Because Plaintiff's own evidence reveals that he did not provide notice of

his claim until August 9, 2013, the claim was not timely pursuant to the requirements of

FLA. STAT. § 768.28, and summary judgment must be granted in favor of the Defendant.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** Defendant's motion

for summary judgment, doc. 42, be **GRANTED** as Plaintiff did not provide timely notice

of his tort claims pursuant to FLA. STAT. § 768.28(6)(a), and because the breach of

contract claim is barred by sovereign immunity.

**IN CHAMBERS** at Tallahassee, Florida, on December 16, 2013.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and
recommendations within 14 days after being served with a copy of this report and
recommendation.  A party may respond to another party's objections within 14 days after
being served with a copy thereof.  Failure to file specific objections limits the scope of
review of proposed factual findings and recommendations.**